B1040 (FORM 1040) (12/15)

|  |  |
|---|---|
| **ADVERSARY PROCEEDING COVER SHEET**<br>(Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER**<br>(Court Use Only) |

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
|  |  |

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|
|  |  |

| **PARTY** (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

---

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11 - Recovery of money/property - § 542 turnover of property
☐ 12 - Recovery of money/property - § 547 preference
☐ 13 - Recovery of money/property - § 548 fraudulent transfer
☐ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 - Dischargeability - § 523(a)(5), domestic support
☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63 - Dischargeability - § 523(a)(8), student loan
☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71 - Injunctive relief - reinstatement of stay
☐ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 - Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa *et.seq.*
☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

B1040

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||
|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. |
| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| RELATED ADVERSARY PROCEEDING (IF ANY) |||
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) ||
|---|---|
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) |

# INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

VANDERHOFF LAW GROUP
Alan Vanderhoff, Cal. Bar No. 138032
Jeanne C. Vanderhoff, Cal. Bar No. 138011
600 West Broadway, Suite 1550
San Diego, California 92101
(619) 299-2050

Attorneys for Pacific Imperial Railroad, Inc.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| In re: | Adv. No. |
|---|---|
| PACIFIC IMPERIAL RAILROAD, INC., | **COMPLAINT FOR AVOIDANCE OF FRAUDULENT CONVEYANCES** |
| Reorganized Debtor. | |
| Case No. 16-06253-LT11 | |
| PACIFIC IMPERIAL RAILROAD, INC., | |
| Plaintiff, | |
| v. | |
| CHARLES MCHAFFIE; CC TRUST, CHARLEMAGNE TRUST, and DOES 1 THROUGH 20. | |
| Defendants. | |

Plaintiff, Pacific Imperial Railroad, Inc., reorganized debtor in the above-captioned case, alleges as follows:

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 105 and General Order 312-D of the United States District Court for the Southern District of California.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because the underlying bankruptcy case is pending in this district.

3. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (C), and (H) because it is a proceeding to recover fraudulent conveyances.

4. If it is determined that this Court may not enter final orders or judgments or conduct a trial absent consent of the parties, the plaintiff hereby consents to the entry of final orders by the Bankruptcy Court.

## THE PARTIES

5. Pacific Imperial Railroad, Inc. is the reorganized debtor in the above-captioned bankruptcy case.

6. Plaintiff is informed and believes and thereon alleges that Defendant Charles McHaffie is an individual residing in state of California.

7. Plaintiff is informed and believes and thereon alleges that Defendant CC Trust is an entity of unknown form that is owned or controlled by Mr. McHaffie.

8. Plaintiff is informed and believes and thereon alleges that Defendant Charlemagne Trust is an entity of unknown form that is owned or controlled by Mr. McHaffie.

9. Plaintiff is informed and believes, and thereon alleges, at all relevant times herein mentioned Mr. McHaffie, CC Trust, and Charlemagne Trust were and are the alter egos of each other and there is such unity of interest and ownership that the individuality or separateness of the three has ceased to exist and if the acts are treated as those of Mr. McHaffie, CC Trust, and Charlemagne Trust alone, an inequitable result will follow.

10. The true names and capacities of defendants does 1 through 20, inclusive, are unknown to Plaintiff at this time. Plaintiff therefore sues such defendants by fictitious names. Upon information and belief, Plaintiff alleges that each fictitious defendant is in some way responsible for, participated in, or contributed to the matters and things that Plaintiff complains herein. When the true names of such defendants and, as appropriate, their respective responsibility for, participation in and contribution to, the matters and things alleged herein are ascertained by Plaintiff, Plaintiff will seek leave to amend this Complaint to allege the same.

## GENERAL ALLEGATIONS

**A. PIR's Bankruptcy Case.**

11. On October 13, 2016 (the "Petition Date") PIR filed a voluntary petition under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court") commencing the above-captioned bankruptcy case.

12. By an order entered on June 13, 2017, the Bankruptcy Court confirmed PIR's Third Amended Plan of Reorganization Dated May 24, 2017 (the "Plan").

13. Pursuant to the terms of the Plan, Plaintiff was vested with all claims and causes of action that were owned by PIR prior to the Petition Date.

**B. Formation of PIR and Self-Dealing by Mr. Stoecklein and Mr. Jory.**

14. Plaintiff is informed and believes and thereon alleges that PIR was incorporated by Donald Stoecklein on or about October 27, 2011.

15. Concurrently with the incorporation of PIR, PIR issued 600,000 shares of PIR stock to Mr. Stoecklein and 3,000,000 to Camden.

16. Plaintiff is informed and believes and thereon alleges that neither Mr. Stoecklein nor Camden made substantial cash capital contributions into PIR in exchange for the shares of PIR stock that they received.

3

17. Plaintiff is informed and believes that Mr. Jory held a fiduciary position with AC Funding as an officer, director, and/or majority shareholder at all times relevant to this Complaint.

18. Plaintiff is informed and believes and thereon alleges that on February 4, 2013, Mr. Stoecklein caused PIR to enter into an Advisory and Consulting Agreement with AC Funding pursuant to which AC Funding was to provide general advice to PIR in exchange for a flat fee of $430,000 (the "AC Funding Agreement").

19. Plaintiff is informed and believes and thereon alleges that Mr. Jory, AC Funding, and officers or employees of AC Funding (if any) did not have any particular expertise with regard to the operation or development of railroads.

20. Plaintiff is informed and believes and thereon alleges that Mr. Stoecklein caused PIR to enter into the AC Funding Agreement as a mechanism to allow Mr. Jory and Mr. Stoecklein to withdraw money from PIR that had been invested in PIR or loaned to PIR by others or to withdraw any capital that they had invested themselves.

**C. The Appropriation of Investor Funds by Mr. Stoecklein and Mr. Jory and the Creation of False Debt in PIR.**

21. Plaintiff is informed and believes and thereon alleges that Mr. Stoecklein and Mr. Jory engaged in a practice by which they would sell shares of stock owned by them or companies they controlled to new investors. They would then keep most of the money for themselves and "lend" a portion of the money to PIR. Later, they would use the "loans" as a means of withdrawing cash from PIR for themselves.

22. For example, on or about December 2, 2011, Camden entered into a Stock Purchase Agreement (the "WB Stock Purchase Agreement") with WB Acquisitions, Inc. ("WB") pursuant to which Camden agreed to sell shares of PIR stock to WB. PIR's records indicate that PIR received $50,000 from WB on December 22, 2011 and another $20,000 from WB on January 10, 2012. Both

4

1 payments were recorded as in PIR's books and records as "loans" from Camden. The WB Stock Purchase Agreement was signed by Mr. Stoecklein both as President of Camden and as President of PIR.

23. For another example, on November 15, 2013, Mr. Stoecklein entered into a Stock Purchase and Option Agreement (the "Dahlman Stock Purchase Agreement") with TEU, Inc. ("TEU") which outlined the terms and conditions for the sale of up to 28,000,000 shares of PIR common stock which Mr. Stoecklein owned. TEU was a company owned or controlled by Ernest Dahlman. The Dahlman Stock Purchase Agreement provided that the purchase price for Mr. Stoecklein's PIR stock would be paid to AC Funding.

24. On November 18, 2013, Mr. Dahlman's company exercised its option to purchase 5,000,000 share of PIR common stock from Mr. Stoecklein. Mr. Dahlman or entities controlled by him paid $750,000 to AC Funding and received 5,000,000 shares of PIR stock from Mr. Stoecklein. The 5,000,000 shares of PIR stock purchased by TEU are evidenced by Certificate No. PIR.41 as reflected on the official records of PIR's transfer agent.

25. Mr. Stoecklein alleged in a complaint that, pursuant to an oral side-agreement between Mr. Stoecklein, Mr. Jory, Mr. McHaffie, Locati, and AC Funding, the $1,000,000 the proceeds from the sale of Mr. Stoecklein's 5,000,000 shares of PIR stock to TEU were to be distributed by AC Funding as follows: (1): $250,000 to Mr. Jory, (2) $250,000 to Locati, (3) $250,000 to Mr. McHaffie, and (4) $250,000 to Mr. Stoecklein.

26. Plaintiff is informed and believes and thereon alleges that on November 18, 2013, $750,000 of the $1,000,000 of TEU payment was deposited into AC Funding's Bank Account.

27. Plaintiff is further informed and believes and thereon alleges that on or about November 21, 2013, PIR received a payment in the amount of $100,000 from Blueberry Ridge Holdings LLC ("Blueberry"), a company owned and controlled by

TEU's principal, Mr. Dahlman. November 22, 2013, PIR received another payment from Blueberry in the amount of $150,000.

28. On November 15, 2013, PIR signed a promissory note in favor of Locati in the original principal amount of $250,000. Plaintiff is further informed and believes and thereon alleges that promissory note was executed on account of the $250,000 received by PIR from Mr. Dahlman's company, Blueberry. Neither the funds deposited nor the shares sold originated from Locati. The promissory note to Locati was signed on behalf of PIR by Ernest Dahlman who was PIR's CEO at the time.

29. As another example, on or September 5, 2012, Camden entered into a Stock Purchase Agreement (the "DJB Stock Purchase Agreement") with DJB Holding Corporation ("DJB Holding") pursuant to which Camden agreed to sell shares of stock in PIR to DJB Holding in exchange for an initial payment of $4,000 and additional payments of $300,000. DJB Holding is owned or controlled by Daren J. Barone.

30. PIR's records indicate that PIR received $4,000 from DJB Holding on September 7, 2012 and another $150,000 on January 31, 2013. PIR's records also indicate that PIR received $150,000 from "SLG Client Trust Acct." on December 13, 2012. All three payments were recorded in PIR's books and records as "loans" from Camden. The DJB Stock Purchase Agreement was signed by Mr. Stoecklein both as President of Camden and as President of PIR.

31. As another example, on or September 5, 2012, Camden entered into a Stock Purchase Agreement (the "GSW Stock Purchase Agreement") with GSW Holding Corporation ("GSW Holding") pursuant to which Camden agreed to sell shares of stock in PIR to GSW Holding in exchange for an initial payment of $4,000 and additional payments of $300,000. GSW Holding is or was owned or controlled by Greg Watkins.

32. PIR's records indicate that PIR received $4,000 from GSW Holding on September 7, 2012 and another $150,000 on January 31, 2013. PIR's records also indicate that PIR received $130,798.83 from "SLG Client Trust Acct." on December 13, 2012. All three payments were recorded in PIR's books and records as "loans" from Camden. The GSW Stock Purchase Agreement was signed by Mr. Stoecklein both as President of Camden and as President of PIR.

33. Between June 5, 2013 and February 27, 2015, PIR paid $525,000 to Camden.

34. Between June 5, 2013 and February 27, 2015, at the times that PIR paid $525,000 to Camden purportedly on account of the false loans made by Camden to PIR.

35. At the time that PIR made the payments to Camden in the aggregate amount of $525,000, there was no genuine debt owing to Camden by PIR.

36. At the time that PIR made the payments to Camden in the aggregate amount of $525,000, Mr. Stoecklein owed a duty to PIR to act in the best interests of PIR.

37. Causing PIR to make the payments to Camden in the aggregate amount of $525,000 was not in the best interests of PIR.

**D. Transfers Received by Mr. Jory or Entities Controlled by Mr. McHaffie during the Four Years Preceding the Petition Date.**

38. During the four years preceding the Petition Date, PIR made four transfers to CC Trust in the aggregate amount of $91,000 including (1) $1,000 on January 4, 2013, (2) $17,500 on May 16, 2013, (3) $32,500 on May 29, 2013, and (4) $40,000 on July 21, 2015 (the "CC Trust Payments").

39. During the four years preceding the Petition Date, PIR made numerous transfers to Mr. McHaffie and entities controlled by Mr. McHaffie in the aggregate amount of not less than $99,530 (the "McHaffie Payments"). The McHaffie Transfers included, without limitation, (1) $1,200 on October 29, 2012, (2) $4,000 on

7

November 29, 2012, (3) $2,000 on December 10, 2012, (4) $2,100 on March 22, 2013, (5) $9,750 on January 20, 2015, (6) $9,000 on October 26, 2015, (7) $21,000 on October 26, 2015, (8) $20,000 on January 22, 2016, and (9) $10,000 on March 2, 2016.

## FIRST CAUSE OF ACTION
### (Fraudulent Conveyance – 11 U.S.C. § 548(a)(1)(B)

40. Plaintiff refers to and incorporates herein by reference all the allegations contained in paragraphs 1 through 39 inclusive, as though set forth fully herein.

41. The transfers of the CC Trust Payments from the Debtor to CC Trust were transfers of property of the Debtor.

42. The transfers of the CC Trust Payments from the Debtor to CC Trust were made within four years of the Petition Date.

43. The Debtor received less than reasonably equivalent value in exchange for the transfers of the CC Trust Payments from the Debtor to CC Trust.

44. The Debtor was insolvent on the dates that the CC Trust Payments from the Debtor to CC Trust or was made insolvent by the transfers.

45. When the CC Trust Payments from the Debtor to CC Trust, the Debtor was engaged in business or was about to engage in business for which any property remaining with the Debtor was an unreasonably small capital.

46. When the CC Trust Payments from the Debtor to CC Trust, the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

## SECOND CAUSE OF ACTION
### (Fraudulent Conveyance – 11 U.S.C. § 548(a)(1)(B)

47. Plaintiff refers to and incorporates herein by reference all the allegations contained in paragraphs 1 through 46 inclusive, as though set forth fully herein.

48. The transfers of the CC Trust Payments from the Debtor to CC Trust were transfers of property of the Debtor.

49. The transfers of the CC Trust Payments from the Debtor to CC Trust were made within four years of the Petition Date.

50. The CC Trust Payments from the Debtor to CC Trust were made with actual intent to hinder, delay, or defraud any entity to which the Debtor was or became, on or after the dates that the AC Funding Payments were made.

## THIRD CAUSE OF ACTION

### (Fraudulent Conveyance – 11 U.S.C. § 548(a)(1)(A)

51. Plaintiff refers to and incorporates herein by reference all the allegations contained in paragraphs 1 through 50 inclusive, as though set forth fully herein.

52. The transfers of the McHaffie Payments from the Debtor to McHaffie were transfers of property of the Debtor.

53. The transfers of the McHaffie Payments from the Debtor to McHaffie were made within four years of the Petition Date.

54. The Debtor received less than reasonably equivalent value in exchange for the transfers of the McHaffie Payments from the Debtor to McHaffie.

55. The Debtor was insolvent on the dates that the McHaffie Payments from the Debtor to McHaffie or was made insolvent by the transfers.

56. When the McHaffie Payments from the Debtor to McHaffie, the Debtor was engaged in business or was about to engage in business for which any property remaining with the Debtor was an unreasonably small capital.

57. When the McHaffie Payments from the Debtor to McHaffie, the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

9

**FOURTH CAUSE OF ACTION**

**(Fraudulent Conveyance – 11 U.S.C. § 548(a)(1)(B)**

58. Plaintiff refers to and incorporates herein by reference all the allegations contained in paragraphs 1 through 57 inclusive, as though set forth fully herein.

59. The transfers of the McHaffie Payments from the Debtor to McHaffie were transfers of property of the Debtor.

60. The transfers of the McHaffie Payments from the Debtor to McHaffie were made within four years of the Petition Date.

61. The McHaffie Payments from the Debtor to McHaffie were made with actual intent to hinder, delay, or defraud any entity to which the Debtor was or became, on or after the dates that the McHaffie Payments were made.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief on all causes of action as follows:

1. On the **First Cause of Action**, for a money judgment joint and severally against Defendants in an amount to be proven at trial, but in no event less than $91,000;

2. On the **Second Cause of Action**, for a money judgment joint and severally against Defendants in an amount to be proven at trial, but in no event less than $91,000;

3. On the **Third Cause of Action**, for a money judgment joint and severally against Defendants in an amount to be proven at trial, but in no event less than $99,530;

4. On the **Fourth Cause of Action**, for a money judgment joint and severally against Defendants in an amount to be proven at trial, but in no event less than $99,530; and

5.  For such other and further relief as are just and proper.

October 12, 2018     VANDERHOFF LAW GROUP

/s/ Alan Vanderhoff
By: _____
Alan Vanderhoff, Esq.
Attorneys for Pacific Imperial Railroad, Inc.

11